UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURG, PA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RUDOLPH AND SLETTEN, INC., et al.,<br><br>Defendants. | Case No. 20-cv-00810-HSG<br><br>**ORDER GRANTING MOTIONS TO STAY**<br><br>Re: Dkt. Nos. 24, 31 |

Pending before the Court are Defendant Rudolph & Sletten Inc.'s ("R&S," Dkt. No. 31) and B.T. Mancini Inc.'s ("Mancini," Dkt. No. 24) (collectively "Defendants" or "Defendant Insureds") motions to stay ("Motions to Stay") the pending action for Declaratory Relief filed by Plaintiffs National Union Fire Insurance Company of Pittsburgh, PA. ("National") and Lexington Insurance Company ("Lexington") (collectively "Plaintiffs" or "Plaintiff Insurers"). Briefing on the motions is complete. Dkt. No. 32 ("Mancini Opp."); Dkt. No. 35 ("Mancini Reply"); Dkt. No. 37 ("R&S Opp."); Dkt. No. 41 ("R&S Reply"). On May 28, 2020, the Court held a hearing. Dkt. No. 43. For the reasons set forth below, the Court **GRANTS** the Motions to Stay.

**I.   BACKGROUND**

This dispute arises out of an underlying construction defect action where the main defect is alleged cracking in flooring installed at the Kaiser Permanente San Leandro Medical Center in San Leandro, California ("Medical Center"). R&S agreed to provide general contractor services in connection with the construction of the Medical Center. Dkt. No. 25 ("RJN") ¶ 1[1]; Dkt. No. 1

---

[1] Mancini has requested judicial notice of the Complaint in the Coverage Action, Dkt. No. 25, which references and attaches the Complaint, the First Amended Complaint, the Cross-Complaint of R&S, and the Order Regarding Petition to Compel Arbitration in the underlying State Action. Plaintiffs do not object to the request for judicial notice. Mancini Opp. at 7 n.1.

("Compl.") ¶ 2. On July 28, 2011, R&S entered into a subcontract agreement with Mancini for installation of the flooring materials for the Medical Center. RJN ¶ 2; Compl. ¶ 3. Following commencement of construction in or about December 2012, cracking was allegedly observed and repaired in the flooring in 2013, and additional cracking was discovered in or about January 2014. RJN ¶ 1; Compl. ¶ 37-38. The underlying claims were filed by Kaiser Foundation Hospitals ("Kaiser") against the Defendant Insureds and others, and are currently the subject of a pending construction defect arbitration and related lawsuit in Alameda Superior Court ("Superior Court"), Case No. RG18911450 ("State Action"). Dkt. No. 24 at 7.

R&S participated in Kaiser's Owner-Controlled Insurance Program issued by National's general liability insurance contracts, specifically (1) Policy No. GL-458-13-29 (May 15, 2010 through May 15, 2011); (2) Policy No. GL-487-08-70 (May 15, 2011 through May 15, 2012); (3) Policy No. GL-961-27-35 (May 15, 2012 through May 15, 2013); (4) Policy No. GL-452-25-89 (May 15, 2013 through May 15, 2014); and (5) Policy No. GL-538-82-66 (May 15, 2014 through December 31, 2014) (collectively, "National Policies"). RJN ¶ 1; Compl. ¶ 6.

In addition to the National Policies, National issued first-layer excess liability and Lexington issued second-layer excess liability to Kaiser, each with a period from May 15, 2010 through December 31, 2014. RJN ¶ 1; Compl. ¶ 7-8. Pursuant to the National Policies and underlying insuring agreements, National is required to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and Plaintiffs are also required to "defend the insured against any 'suit' seeking those damages." RJN ¶ 1; Compl. ¶ 46.

After initiating the State Action on July 3, 2018, Kaiser filed a First Amended Complaint ("FAC") on or about August 23, 2018 in the State Action asserting causes of action for (1) breach of contract, (2) breach of express warranty, and (3) negligence. RJN ¶ 3, 4; Dkt. No. 31-2, Declaration of Deborah Broom ("Broom Decl.") ¶ 3(a). The FAC alleges that the flooring system developed progressive cracking and, in some instances, buckling as the result of defects in materials, construction and/or workmanship for which R&S is responsible. RJN ¶ 4.

On or about October 12, 2018, R&S filed a cross-complaint against Mancini, among other

1  defendants, asserting causes of action for (1) equitable indemnity, (2) contribution and
2  apportionment, (3) express contractual indemnity, (4) breach of contract, (5) breach of express and
3  implied warranties, (6) declaratory relief re: duty to defend, and (7) declaratory relief re: duty to
4  indemnify. RJN ¶ 5; Broom Decl. ¶ 3(b). On March 4, 2019, on Kaiser's motion, the Alameda
5  County Superior Court ordered that Kaiser, R&S, Mancini and the architect, Ellerbie Beckett, Inc.
6  ("EBI"), arbitrate the claims and cross-claims between them pursuant to an arbitration agreement
7  in the project contract between R&S and Kaiser. RJN ¶ 6; Broom Decl. ¶ 3(d). The Plaintiff
8  Insurers are not named as parties to the arbitration, and insurance coverage is not at issue in the
9  arbitration. Mancini Opp. at 8.

10  The Superior Court also ordered that the remainder of the action be stayed, including all cross-claims apportioning fault and liability among the contractors and material providers. *Id*. The stay of the crossclaims in the action is to remain in place until the arbitrator resolves the merits of Kaiser's claims against Mancini, R&S, and EBI. RJN ¶ 6. An arbitrator has yet to be selected, and no document productions or other discovery has started. Broom Dec. ¶ 3(e), (f).

## II. LEGAL STANDARD

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Based on the statute's "permissive language," district courts have broad "discretion to dismiss a federal declaratory judgment action when 'the questions in controversy … can better be settled in' a pending state court proceeding." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir.2011) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995) (holding that review of district court "decisions about the propriety of hearing declaratory judgment actions" is "for abuse of discretion"). "However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir.1998) (en banc).

In deciding whether to stay or dismiss an action for declaratory relief, a district court

3

should consider the three factors set forth in the Supreme Court's decision in *Brillhart*. *See R.R. St. & Co.*, 656 F.3d at 975. Specifically, a district court should (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation. *Id.* (quoting *Dizol*, 133 F.3d at 1225). The three *Brillhart* factors are the "philosophic touchstone" of the *Wilton/Brillhart* analysis. *Id.* In addition, the Ninth Circuit has suggested other considerations that may weigh in favor of a district court's decision to dismiss or stay an action for declaratory relief: whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; whether the use of a declaratory action will result in entanglement between the federal and state court systems; the convenience of the parties; and the availability of and relative convenience of other remedies. *Dizol*, 133 F.3d at 1225 n. 5 (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir.1994) (Garth, J., concurring)). At bottom, "the district court must balance concerns of judicial administration, comity, and fairness to the litigants." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir.2005) (internal quotation marks omitted).

Defendants also appear to move to stay pursuant to California law governing declaratory relief actions under *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287 (1993), and pursuant to the Court's inherent powers to stay proceedings as set forth in *Landis v. North American Co.*, 299 U.S. 248 (1936). Dkt. No. 24 at 18. But a stay of an action is procedural, not substantive. *United Specialty Ins. Co. v. Bani Auto Grp., Inc.*, No. 18-1649 BLF, 2018 WL 5291992, at *4 (N.D. Cal. Oct. 23, 2018). And federal courts sitting in diversity apply federal procedural law and state substantive law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). "[B]ecause a stay of an action is procedural, not substantive, the Court applies federal law to determine whether to grant a stay." *Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-cv-05345-LHK, 2019 WL 570760, at *4 (N.D. Cal. Feb. 12, 2019). Here, Plaintiffs bring this action under

diversity jurisdiction. Compl. ¶¶ 22-23. Therefore *Landis*, not *Montrose*, applies.[2]

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. A trial court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.,* 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Levya v. Certified Grocers of Cal., Ltd.,* 593 F.2d 863–64 (9th Cir. 1979)). "Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* The party seeking a stay bears the burden of establishing a "clear case of hardship or inequity in being required to go forward" with a lawsuit "if there is even a fair possibility that the stay ... will work damage to some one else." *Landis*, 299 U.S. at 255.

**III.  DISCUSSION**

    **A.  *Brillhart* Factor No. 1**

The first *Brillhart* Factor is that the Court should avoid needless determination of state law issues. *Dizol*, 133 F. 3d at 1225. Defendants contend that this action would necessarily require the Court to decide coverage issues under state law, because state law governs the resolution of substantive issues in this diversity action. Dkt. No. 24 at 13 (citing *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001)). Plaintiffs counter that while this action presents issues involving California insurance law, the relevant state law issues here are not being litigated

---

[2] That said, the *Brillhart* factors mirror California law's mandate of a stay "when the coverage question turns on facts to be litigated in the underlying action." *Brillhart*, 316 U.S. at 495; *Montrose*, 6 Cal. 4th at 301.

in the State Action, which involves claims of breach of contract, breach of warranty, and negligence between and among various construction and manufacturing companies and the hospital that commissioned their work. Mancini Opp. at 12. While the present action requires interpretation of the National Policies, Plaintiffs also contend that no coverage questions are raised in the State Action, and that the Court's determination here would be original rather than repetitive. *Id.* (citing *Am. Cas. Co. of Reading, Penn. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999) (first *Brillhart* factor weighed in favor of retaining jurisdiction where "state court case did not include the coverage issue, and because the coverage issue in the federal action was not contingent on any further state court proceedings")).

Plaintiffs similarly contend that in deciding the relationship of the parties under the National Policies, there is no reason for this Court to consider who was responsible for designating the products that failed (Dkt. No. 24 at 13); who was responsible for the overall design and implementation of the flooring (*id.*); whether there were manufacturing issues with the products themselves (*id.*); whether Kaiser suffered any loss of use (*id.* at 14); whether the defects were the result of initial installation or later repairs (*id.* at 15); or what role Defendants played in the choice of manufacturing flooring products used (*id.* at 16). Plaintiffs further contend that the Court need not resolve liability in order to determine whether coverage exists, because the relevant exclusion is based on the meaning of certain terms in the National Policies and the timing of when defects arose, and these are issues that can be resolved either by examining the National Policies themselves, the complaint in the underlying State Action, and Mancini's own admissions regarding when the defects were discovered. Mancini Opp. at 13-14.

To determine whether this case would involve needless determination of state law issues, the Court will address the relevant state law and factual disputes in turn.

    **i.    Whether or Not There Has Been an "Occurrence" Is Dependent On Facts At Issue In The Underlying Action**

Plaintiffs seek a judicial determination that there is no obligation to defend or indemnify the Defendants based on the fact that there has been no "Occurrence," which is defined under the National Policies as "an accident, including continuous or repeated exposure to substantially the

same general harmful conditions." RJN ¶ 1; Compl.¶ 46. Specifically, Plaintiffs contend that defects in the flooring due to faulty construction work resulted in progressive buckling and cracking throughout Medical Center, and therefore there is no occurrence giving rise to coverage. RJN ¶1; Compl. ¶ 57a. Mancini disputes this argument, and contends that whether the floor cracks were the result of accidental conduct by Mancini or R&S turns on facts to be litigated in the State Action. According to Mancini, in order for the Court to decide that issue, it would need to apply California law and make findings as to facts currently at issue and still the subject of discovery in the State Action.

Based on the modified definition of "Occurrence" in the Continuous or Progressive Damage Endorsement in the relevant policy, Plaintiffs contend that any continuing or progressive property damage will be deemed to be a single occurrence that occurred when the property damage first commenced. Under California law, "the time of occurrence of an accident within the meaning of an insurance policy is the time the complaining party was damaged, not the time the wrongful act was committed." *Pennsylvania General Ins. Co. v. American Safety Indemnity Co.*, 185 Cal.App.4th 1515, 1526 (2010) (citing *Hallmark Ins. Co. v. Superior Court*, 201 Cal.App.3d 1014, 1018 (1988)). In the context of "property damage" caused by defective construction, the time of the "occurrence" is when the "property damage" first occurred, not when construction first began or when construction was completed. *See Baroco West, Inc. v. Scottsdale Ins. Co.*, 110 Cal.App.4th 96, 103 (2003). Therefore, applying the Continuous or Progressive Damage Endorsement, Plaintiffs are attempting to establish that the property damage to the floors first commenced during the 2012-2013 policy and that all subsequent damage was the result of a single "Occurrence" deemed to have occurred starting in November of 2012.

Defendants counter that while defects were initially discovered in early 2013, repairs were undertaken in 2013 to address these issues. Defendant Mancini finished its work in late 2013, and it was not until later in 2014 that further cracking was discovered. *See* Mancini Opp. at 2; RJN ¶ 1; Compl. ¶ 37- 39; Dkt. No. 24-2, Declaration of Joseph Camilleri in Support of Motion to Stay ("Camilleri Decl.") at ¶ 3. The similarities and differences between the 2013 alleged defects and the 2014 alleged defects will no doubt be contested and will be the subject of not-yet-begun

7

discovery in the State Action.  The answers to the above factual and legal questions, after development and litigation in the State Action, will undisputedly help establish whether the flooring problems Kaiser experienced were the result of a single continuous occurrence, or two separate occurrences.  The dispute as to whether or not there has been a single "Occurrence" is the subject of discovery, investigation, and likely additional field testing in the State Action.

### ii. The Application of the Builders' Risk Exclusion is Dependent on Facts at Issue in the Underlying Action

Plaintiffs also argue that the "Builders Risk Exclusion" bars coverage for damage to "any real property at, in or on the project site … arising out of the ongoing operations of you, any subcontractor, or any other contractors working directly or indirectly on their behalf."  RJN ¶ 1; Compl. ¶ 57d.  Plaintiffs contend that the alleged damage arose out of R&S' and Mancini's ongoing operations during the 2012-13 insurance contract period.  However, determining whether this exclusion applies will require a detailed inquiry into the timing of Defendants' work through multiple phases of the project, completion dates, and timing of discovery of the defects in different areas of the Medical Center.  It will also require a factual inquiry into whether the floor cracks were a result of initial installation or later repairs.

As discussed above, additional defects were discovered in 2014, and Defendant Mancini completed the floor installation by late 2013.  Defendants contend that the facts currently under investigation in the State Action will establish that the 2014 alleged defects were the result of a separate occurrence which took place after completion of the floor installation by Mancini.  These issues and factual determinations overlap with those being contested in the State Action, and any factual determinations made by the Court could conflict with the findings to be made by the Superior Court in that case.  The coverage question related to the Builder's Risk Exclusion necessarily turns on facts to be litigated in the State Action, and the necessary application of state law to those facts.

### iii. The Applicability of the Business Risk Exclusions is Dependent On Facts To Be Determined In The Underlying Action

Plaintiffs also seek a judicial determination that they have no obligation to defend or indemnify R&S and Mancini based on Business Risk Exclusions (j) (k) and (l).  Plaintiffs contend

8

that these exclusions related to damage to property, damage to "your work," and damage to impaired property operate to preclude coverage to R&S and Mancini. RJN ¶1; Compl. ¶ 57e. Again, however, these exclusions and the policies' express exceptions to them will be explored and resolved as part of the litigation of the disputes in the underlying proceedings.

For example, exclusion (l) does not apply to R&S "if the damage or work or the work out of which the damage arises was performed on your behalf by a subcontractor." RJN ¶ 1, Compl. ¶ 46. This "your work" exclusion will not apply to R&S if Kaiser's alleged damages arose out of Mancini's work, a core and disputed issue that will be resolved in the underlying proceedings. Moreover, R&S may have to advance a theory in these proceedings—that Kaiser's allegations of property damage arise out Mancini's work— that will necessarily jeopardize or limit its defenses to Kaiser's claims in the underlying proceedings, *i.e*., that the Plaintiffs' damages were not the result of R&S's performance by and through its subcontractors, but were due to other causes.

Paragraphs 5 and 6 of exclusion (j) do not apply to property damage in the completed operations hazard. RJN ¶ 1, Compl. ¶ 46. Whether the property at issue was included in the completed operations hazard will also be resolved in the underlying State Action: this coverage depends on when work was completed, and thus its applicability will again depend on whether and when completed work was accepted or used by Kaiser, and when damage was identified and repaired. The State Action and the present action will both necessarily delve into the facts surrounding the deficiencies in the flooring, and thus will involve the questions of what constituted  "work" and "product." The adjudication of these factual issues in this case could also create the possibility of inconsistent positions and/or collateral estoppel in the State Action.

### iv. Applicability of the Professional Liability Exclusion is Dependent on Facts to Be Determined in the Underlying Action

Plaintiffs also seek declaratory relief regarding whether the Professional Liability Exclusion Endorsement on the National Policy applies. That endorsement precludes coverage for property damage arising out of the rendering or failing to render any professional services by Mancini. RJN ¶ 1; Compl. ¶ 57f. The National Policy states that professional services include preparing or approving, for example, drawings, change orders, or specifications, and supervisory

1    or inspection activities performed as part of any architectural or engineering activities. RJN ¶ 1;
2    Compl. ¶ 46. The applicability of this exclusion once again directly turns on factual issues being
3    litigated in the State Action, including what role if any Mancini played in the choice of
4    manufactured flooring products used. Accordingly, the factual determinations needed to
5    determine the applicability of this exclusion overlap with many of the factual controversies
6    currently being addressed in the State Action, and determining whether this exclusion applies
7    would require application of state law to those facts.

        **v.**    **Timing of Defects and Discovery is at Issue in the Underlying Action.**

Plaintiffs allege there was no covered "property damage" during the 2010—2012 policy periods. RJN ¶ 1; Compl. ¶ 57b. They further allege that the Continuing or Progressive Injury or Damage Exclusion applies to the 2013 and 2014 Policies because the damages were discovered in 2012, before the inception of the 2013 and 2014 Policies. RJN ¶ 1; Compl. ¶ 57c. All of these conclusions will require factual determinations to be made regarding when defects occurred and when they were discovered. These factual disputes are currently being investigated and litigated in the State Action. Camilleri Decl. at ¶ 2. Whether a factual basis exists to deny coverage on these grounds will again depend on the application of state law to facts at issue in the State Action.[3]

***

The above facts, once developed and litigated in the State Action, will undoubtably help establish whether the flooring problems were the result of a single continuous occurrence, or two separate occurrences. This factor weighs in favor of a stay.

**B.**    *Brillhart* **Factor No. 2**

In an insurance coverage case, this factor "usually is understood to favor discouraging an

---

[3] Plaintiffs contend that the coverage issues can be resolved in an "early motion for summary judgment with minimal discovery." Dkt. No. 32 at 14. This contention does not appear to be accurate, given that the factual support relied upon by Plaintiffs is also the subject of discovery and investigation–and is specifically disputed by Defendants–in the Underlying Action. Further, Plaintiffs' proposal does not resolve the substantial risk that Defendants will be collaterally estopped from relitigating any adverse findings or conflicting contentions made in this case in the Underlying Action.

insurer from forum shopping, *i.e.*, filing a federal declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." *Starr Indemnity and Liability Insurance Company v. Camenzind Dredging, Inc.*, Case No. 19-CV-00694-LHK, 2019 WL 5102571, at *3 (N.D. Cal. Oct. 11, 2019) (quoting *Am. Cas. Co. of Reading, Penn. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999)). The Ninth Circuit has held that:

> If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court. The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief. Nonetheless, federal courts should generally decline to entertain reactive declaratory actions.

*Dizol*, 133 F.3d at 1225 (citations omitted).

Defendants contend that Plaintiffs are engaged in forum shopping because they filed this action here, rather than in state court, in a "race to judgment." Dkt. No. 24 at 17. Plaintiffs contend that because neither of them are parties to the State Action, there necessarily could not have been forum shopping. Mancini Opp. at 14. While Plaintiffs could have filed their declaratory action in state court, they certainly were not required to. *Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir. 1992) ("We know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage."). This factor is neutral.

### C. *Brillhart* Factor No. 3

The third *Brillhart* factor considers "the policy of avoidance of duplicative litigation." *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1373 (9th Cir. 1991). "If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Dizol*, 133 F.3d at 1225. "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495.

Here, Defendants allege that the underlying actions are "parallel" state proceedings, and that the facts at issue in the State Action and this action are the same. Plaintiffs once again

11

1  contend that neither of the underlying actions involves Plaintiffs, and that the insurance coverage
2  dispute here is different from the liability disputes in the State Action. Mancini Opp. at 15. As
3  discussed above, in order to enter a declaratory judgment as to the coverage issues presented by
4  Plaintiffs in this action, this Court would have to address facts that are substantially similar to
5  those at issue in the Underlying Action. For that reason, this factor weighs in favor of a stay.

### D. California State Law

While recognizing that the Court should apply federal law to determine whether a stay is unwarranted, *Zurich*, 2019 WL 570760, at *3, Defendants nonetheless claim that California law also supports a stay of this action. Dkt. No. 24 at 18. As noted, the Court disagrees. *Montrose* does not apply because where a federal action proceeds under diversity jurisdiction—as is the case here, Compl. ¶¶ 22-23—"federal procedural law, and not *Montrose*, … governs the instant motion." *RLI Insurance Co. v. ACE American Insurance Co.*, Case No. 19-CV-04180-LHK, 2020 WL 1322955, *3 (N.D. Cal. Mar. 20, 2020) (examining when to apply *Brillhart*, *Montrose*, and general abstention law) (quoting *Zurich*, 2019 WL 570760, at *2-5); *United Specialty Ins. Co. v. Bani Auto Group Inc.*, 2018 WL 5291992 at 4 (N.D. Cal. 2018) (applying the *Landis* factors, not *Montrose*); *Scottsdale Ins. Co. v. Grant & Weber*, 2016 WL 7469636 at *3 (C.D. Cal. 2016) (same). Accordingly, the Court will not address California state law on this issue.

### E. *Landis* Stay Factors

A party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When determining whether to grant a party's motion to stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Typically, this balancing test requires the court to consider (1) "the possible damage which may result from the granting of a stay;" (2) "the hardship or inequity which a party may suffer in being required to go forward;" and (3) "the orderly course of justice measured in terms of simplifying or complicating the issues, proof, and questions of law which could be expected to result from a stay." *Id.* (citing *Landis*, 299 U.S. at 254-55).

Defendants contend they will be prejudiced if they are required to fight a two-front litigation with Plaintiffs and are exposed to the potential of having to assert positions in this action that are adverse to their position on similar issues in the State Action. Defendants also contend that a stay of this coverage action pending the resolution of the state court proceedings will have the advantage of likely resolving or shedding considerable light on all of the predicate facts on which Plaintiffs' and Defendants' respective coverage positions will hinge. "In the typical *Landis* stay case, a federal court postpones resolution of the case pending some related proceeding [that] typically serves only to narrow the factual or legal issues for the federal court." *Stoltz v. Fry Foods, Inc.*, 60 F. Supp. 3d 1132, 1136 (D. Idaho 2014); *see also Landis*, 299 U.S. at 250-51 (recognizing that the related case "may not settle every question of fact and law" in the stayed federal action).

Plaintiffs contend that the damage of granting a stay would clearly fall on their shoulders, when they are currently providing defense costs to Mancini under a reservation of rights, and are seeking a judicial determination that they are not required to do so. Therefore, staying this action, according to Plaintiffs, simply delays the coverage liability determinations that will be made at some point, and a judicial resolution of this action (via an "early motion for summary judgment") will simplify the issues.

The Ninth Circuit is clear that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). As explained by the court in *RLI Ins. Co.*, "delaying a determination of whether an insurer owes an insured party coverage does not substantially harm the insurer." 2020 WL 1322955, at *4 (citation omitted). Specifically, the *RLI* court aligned with '[o]ther courts in this district' and found that 'advancing defense costs 'is part of an insurer's obligation and costs of doing business.'' *Id.* (quoting *State Nat'l Ins. Co., Inc. v. US-SINO Inv., Inc.*, No. 5-13-CV-05240-EJD, 2015 WL 5590842, at *5 (N.D. Cal. Sept. 23, 2015)); *see also United Specialty Ins. Co. v. Meridian Mgmt. Grp., Inc.*, No. 15-CV-01039-HSG, 2016 WL 1534885, at *2 (N.D. Cal. Apr. 15, 2016) (rejecting an insurer's argument that a stay would cause the insurer harm). And a *Landis* stay is available even when the parties in the two proceedings

under consideration are not the same, and the factual and legal issues are not identical. *See Zurich*, 2019 WL 570760, at *5 (*Landis* stay of insurer's declaratory relief action proper even though insurer was not party in state action and issues were not identical in two actions).

There is no doubt prejudice to Defendants in having to fight a "two-front war." *State Farm Fire & Cas. Co.*, No. CV-F-10-1990 LJO DLB, 2011 WL 284974, at *7 (E.D. Cal. Jan 26, 2011) (holding that the insured "would be prejudiced if it is required to defend both actions at same time"); *see also Atain Specialty Insurance Co. v. 20 Parkridge, LLC*, No. 15-CV-00212-MEJ, 2015 WL 2226356, at *10 (N.D. Cal. May 11, 2015) ("Defendants should not have to fight both in this action and the Underlying Action, expending significant resources.  To do so would undercut one of the primary reasons for purchasing liability insurance.") (quotation marks omitted)). Applying these principles here, the Court finds that a stay is also warranted under *Landis* to facilitate the orderly course of justice, as virtually all of the predicate facts bearing on Defendants' right to coverage under Plaintiffs' policies will be developed through discovery and litigation in the State Action.

## IV. CONCLUSION

For the reasons noted above, this action is hereby **STAYED** pending resolution of the State Action.  The parties are directed to jointly notify the Court within 48 hours of the conclusion of the State Action.  The clerk is directed to administratively close the case.

**IT IS SO ORDERED.**

Dated: 7/17/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

14