UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RUDOLPH AND SLETTEN, INC., et al., <br><br> Defendants. | Case No. 20-cv-00810-HSG <br><br> **ORDER DENYING PLAINTIFFS' MOTION TO LIFT STAY** <br><br> Re: Dkt. No. 53 |

Pending before the Court is Plaintiffs' motion to lift the stay on proceedings in this case. Dkt. No. 53 ("Mot."). The motion is fully briefed, Dkt. Nos. 54 ("Opp."), 56 ("Reply"), and was argued before the Court on May 9, 2024, Dkt. No. 57 (minutes). The Court then ordered supplemental briefing, Dkt. No. 58, which has now been completed. Dkt. Nos. 59 ("R&S Supp."), 60 ("B&T Mancini Supp."). Having considered the parties' briefing and arguments, the Court will **DENY** Plaintiffs' motion.

At a high level, this case concerns the obligation of National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and Lexington Insurance Company ("Lexington") (collectively, "Plaintiffs") to defend and indemnify Rudolph and Sletten, Inc. ("R&S") and B.T. Mancini Co., Inc. ("B.T. Mancini") (collectively, "Defendants") in an underlying construction defect action brought by Kaiser Permanente in state court where the main defect is alleged cracking in flooring installed at Kaiser's Medical Center in San Leandro, California.[1] *See Kaiser Foundation Hospitals v. Rudolph and Sletten, Inc.; and Does 1-10,* Case No. RG18911450, Superior Court, County of Alameda, California (the "State Action"). The matter has been stayed

---

[1] For greater detail on the factual background and procedural posture of the case, the Court refers the reader to its prior order at Dkt. No. 44.

1    since July 2020, when developments in the State Action prompted the Court to pause proceedings

2    here.  Dkt. No. 44.  Specifically, the state court had ordered Kaiser, R&S, B.T. Mancini, and an

3    architect to arbitrate, and stayed the remainder of the State Action pending resolution of their

4    arbitration, including all crossclaims apportioning fault and liability among the contractors and

5    material providers.  In light of the state court stay, the Court found that a stay of the federal action

6    was appropriate under the *Brillhart* and *Landis* factors since "virtually all of the predicate facts

7    bearing on Defendants' right to coverage under Plaintiffs' policies will be developed through

8    discovery and litigation in the State Action." *Id*. at 14.

9           Plaintiffs, in now moving to lift the stay four years later, argue that the landscape has

10   changed such that current circumstances weigh in favor of resuming litigation.  *See* Mot.  They

11   point particularly to the settlement reached between Kaiser, R&S, and B.T. Mancini in arbitration,

12   which committed Plaintiffs to pay out $22.5 million to Kaiser on Defendants' behalf.  They argue

13   that with Kaiser now out of the suit and Kaiser's claims against R&S and B.T. Mancini finally

14   extinguished, the time has come to resolve their coverage obligations to Defendants before this

15   Court.  Plaintiffs contend that they "have defended and settled a lawsuit they believe their policies

16   excluded," and fear prejudice from further delay.  *Id*. at 13.

17          While the Court is not unsympathetic to Plaintiffs' position, it finds that they have

18   overstated the impact of Defendants' settlement with Kaiser on these proceedings.  After all, and

19   in recognition of the parties' need to develop the relevant factual findings in the State Action

20   before turning to the coverage question, the Court initially stayed this case "pending *resolution* of

21   the State Action." Dkt. No. 44 at 14 (emphasis added).  But no party contends that the State

22   Action has reached a "resolution": instead, R&S and B.T. Mancini "have [merely] assumed

23   Kaiser's position in the continuing cross action against the architect and flooring suppliers." R&S

24   Supp. at 2.  Part and parcel of that position is, of course, engaging in significant discovery.  R&S

25   and B.T. Mancini expect to take more than ten depositions of lay witnesses in the coming two

26   months, anticipate designating 45-50 experts later this year, and estimate that core sampling of the

27   floors – which they characterize as "the most critical investigation" in this case – will be finished

28   as of September 2024.  B.T. Mancini Supp. at 4.  And once these efforts are completed, the parties

will proceed to trial in January 2025. *Id*. at 3. In other words, and from a factual standpoint, the case is far from over.

As a result, the Court on the whole agrees that "the factual issues for resolution in the State Action are no different now that Kaiser is no longer in Arbitration[.]" R&S Supp. at 2. As was the case in July 2020, for instance, the parties must still develop facts central to Defendants' multiple occurrence argument in the State Action. Rather than any settlement, it is discovery and trial that will establish the facts relating to this theory and the floor failure overall, including the timing of when and exactly how the defects occurred. And it is those factual determinations that will ultimately impact the coverage question before this Court. The Court is simply not persuaded by Plaintiffs' position that "the remaining question" supposedly pending in the State Action – *whether* the flooring products were defective – "has no bearing on when the damage appeared[.]" Mot. at 14. Defendants persuasively, and logically, represent that these questions are very much "intertwined," and that, in any event, Plaintiffs' characterization of "the remaining question" is overly narrow. Opp. at 12. Based on a consideration of the parties' briefing and arguments, the Court agrees.

Accordingly, the Court finds maintaining the stay warranted, and **DENIES** Plaintiffs' motion. Dkt. No. 53. Forcing Defendants to present evidence and put on experts in this forum ahead of the State Action trial, which will commence in just seven months, would substantially prejudice them, and could undermine their state court strategy. Plaintiffs, while understandably anxious to resolve their obligations to Defendants, are still raising a second-order coverage question that is likely to hinge entirely on the factual record made in the State Action.

**IT IS SO ORDERED.**

Dated: 5/29/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge